This is a First Amendment retaliation and false arrest case where summary judgment was granted to the defendants by the district court. In addition, there were two motions to disqualify Judge Lowery for bias, the second being under 28 U.S.C. 144. In this case, on the First Amendment, the city of Columbia is responsible for establishing a Facebook page for its police department. That Facebook page was established as a designated public forum in which citizens were permitted to make posts independently and not in response to the city's posts. As this matter was going on… Let me just ask you, what federal appellate court has ever held that a decision to eliminate a limited public forum violates the First Amendment? Without proof of viewpoint discrimination. In other words, a municipality or a government institution has opened a public medium to limited public participation and then concludes as a matter of policy that that's not working and stops it. I have never heard of a case saying that by itself is a First Amendment violation. If they had completely eliminated the forum… No, no, no, no. Completely eliminated public. It was no longer a limited public forum. It became exclusively a government forum for government speaking. Isn't that what happened here? It is what happened here, Your Honor, but I believe that there are a plethora of cases and a lot of them were cited in my reply motion here, Your Honor, that the purpose of the First Amendment is to promote robust discussion in a marketplace of ideas. As they all say, I asked you a question. Is any case held that by itself changing a decision to change a limited public forum into an exclusively government forum violates the First Amendment? Well, I believe there are some Ninth Circuit cases I cited in my original brief, Your Honor, that cite that when you restrict, once it's opened up, restrictions on that is a violation of the First Amendment, Your Honor. Well, give me a case. I've got to go read it. The Ninth Circuit's held a lot of things. Some of them have been reversed. I need a case. Burger versus the City of Seattle. And I believe that stands for that. And I believe also Hooper versus Pascal, which is 241 Federal 30. I assume these are in their brief. They are, Your Honor. Okay. But, Your Honor, like I said, the purpose of the First Amendment and the First Amendment is a core American value and to promote the marketplace of ideas. And once that marketplace is opened up, once it's engaged in, the city, the government cannot censor speech simply because it disfavors the viewpoint. It was permitting posts from citizens on matters related to the police department. And then once a – then there was a public debate going on. Okay. But what's the proof of viewpoint discrimination? Well, the proof is that there was a debate going on with regard to the Citizens Police Review Board and that Mr. Aiken's last post on behalf of Citizens for Justice dealt with that review of an officer engaged in misconduct and turning off a body camera. That was the Laurie Simpson case that's in the video appendix. And once that was posted, there was – all posts were deleted and the policy changed. Because there was a vibrant debate going on in which the Chief of Police and the Police Office Association were attempting to remove the oversight of the Citizens Police Review Board and the close-in-time nature of the censorship, I think it's a reasonable inference that it's related to that and it's viewpoint discrimination. In addition, Your Honor, one of the other – I don't – that doesn't fit what I think of as viewpoint discrimination. There's a public debate about the efficacy of whatever police review mechanisms were in place. And the city – the entity – the Facebook entity says we don't want that on our Facebook. And there's certainly many, many other available places to vent all sides of that debate. So we haven't deprived anyone of a reasonable opportunity to express their views. And everybody – all points of view are being eliminated. It's like it's – in the days of social media, I suspect we're going to see this a lot. The debate is overwhelming the medium, so we're going to stop it. And Your Honor, have they eliminated the Facebook page entirely? No, no. They can always maintain their government speech medium. Government speech is an entirely different segment of First Amendment jurisprudence. Well, Your Honor, I respectfully disagree. I believe that once the forum is established, I believe the precedence from the U.S. Supreme Court established that once this medium is established, that there is an expectation that the citizens have a right to engage in speech that meets the parameters of a vibrant public debate. Issues of public concern are the heart of why the First Amendment was drafted, to protect the government, to stop the government from censoring disfavored viewpoints. And that's what happened here. In addition, Your Honor – I guess I have to – just to follow up with what Judge Volkman is saying. I'm just not following that argument, that there's a lot of other options available to citizens. And if the city wants to establish a Facebook so that they can communicate with citizens about matters of concern, there's been a power outage, and as a result, this is going to happen. Or we have an Amber Alert out. They may make the legitimate decision that we don't want that cluttered up with a bunch of other things, so that citizens, when they go on the page, will know that we're looking for this child, or whatever it might be that they feel is important to get out on a short – on a quick basis. And, Your Honor, if there was an emergency like that, I believe they could legitimately meet the strict scrutiny standard for restricting content during that period when notifications were essential. And there was a compelling government interest. But not all the time is there a heightened or emergency requirement for these sort of communications. Most of the time, they're talking about fundraisers or doing other things. And during this time, there's no compelling government reason. There's no narrowly tailored focus. What was brought here is this forum was opened up and restricted, and there was no forum analysis. And as you noted in Bowman v. White, there needs to be a forum analysis by the district court to apply the level of appropriate scrutiny. That didn't happen here, Your Honor. In addition, the district court said there was no right to film a citizen petitioning the government for redress agreements. And the city retaliated against Mr. Eakins by putting a poster up with a wrong email website address for Citizens Justice that was expired in April of 2011 and was discovered in October 2011 with false information, and they threatened him with retaliation. Well, I just don't think the lobby of a police station is a public forum. Say what? I really have serious doubt whether the lobby of a police station is a public forum. Well, Your Honor, it has a memorial to a fallen officer. It has media information. It has handouts to the public, and it is the point designated for the petitioning of the government for redress agreements. Textual language from the first amendment. I'm going to stop. Okay. But it also is a place for victims, rape victims, confidential informants, and other people may want to come to provide information to police, and they're not going to want to be subject to being filmed by the media. And that would be a compelling reason for limits at certain times, Your Honor, but you can't go to blanket. I'm sorry. May it please the court? First, I apologize to the court and counsel. It was my fault that this case is on the last instead of the first case, so I apologize. Regarding the Facebook issue. Who are you representing? I don't understand the need for a divided argument. I apologize, Your Honor. I represent the city of Columbia and the officers, and I guess there's a divided argument because Boone County prosecutors, they were dismissed at the motion to dismiss stage, and their issues are all absolute immunity issues, and basically the case has kind of shifted into a first amendment case, and they have basically nothing to do with that whatsoever, Your Honor. So we've got two-thirds of the time for what isn't relevant? I'll be serious. Your Honor, the absolute immunity argument. The absolute immunity argument. We permit it. Pardon? I'll yield as much time as necessary. We permit it, but divided arguments are rarely helpful. In my mind, the absolute immunity argument, and probably in Mr. Fein's mind, is not really subject to debate. Proceed. I apologize, Your Honor. Regarding the Facebook issue, one thing, and I agree with the court's questions to opposing counsel. One other thing to bring up is there are no court of appeals cases I can find even addressing the Facebook standard. Do you agree it's a designated public forum? No, not necessarily. How would you analyze it under first amendment? That's a great question, Your Honor, and I think that's a problem. It's a problem because in this case, it was raised at the summary judgment stage, and so there was a lot of discovery that was not done. What we did in addressing it at the summary judgment stage was use the Tenley-Sparks case, which is a northern Illinois district court case, which is the only case I could find that addressed this issue, and I think that's what the district court did, too. So what I would say is even if it's a designated public forum, we still win because it was a content-neutral changing of the forum and reduction of the comments and posts. The court brought up very valuable consideration. Maybe this isn't the case to decide it in, though, and I don't know because of the way this was brought up in this case. Mr. Aiken's Facebook page and Citizens for Justice may have more followers or friends or whatever the term is in the city of Columbia. He may have a bigger voice in the city of Columbia, and the city of Columbia may not be the one. I mean, Facebook is the one operating the forum. I think those are some issues that we didn't get to. So this case may need to be limited to these facts and the record before this court. I just thrown that out there because this was not the central issue of this case until the summary judgment stage. I think for purposes of this analysis, the city of Columbia tried to make this a non-public forum, and the undisputed facts absolutely state that this is a non-public forum. We reserve the right to remove any comments. At best for appellants, it's a limited public forum, and in that case, the undisputed facts are absolutely clear that it was a citywide determination in 2011 that they were trying to get a social media policy probably to address these issues which are not completely resolved regarding Facebook and Instagram and all these other various social media outlets on how to handle this. And the undisputed facts absolutely state this, had a blanket freeze on any sort of non-government speech being intersected into city of Columbia Facebook pages. And the undisputed facts indicate that absolutely everyone's posts that were not, well, everyone else's posts other than city of Columbia police departments were removed, and all comments that did not relate to the posts by the city of Columbia police department were removed. There is no question about that. So even if you apply, and I'm not sure that the current forum standard even applies in this case because it's Facebook and no court of appeals in the United States has looked at this that I can tell, but I think for purposes of this case and the record, that's the best case scenario for the appellants. And in that case, we still win because it was absolutely content neutral. It was across citywide. There is no fact that it was not content neutral. Mr. Akins is upset because he had videos, apparently links posted on this Facebook page, and I don't quite understand totally how Facebook works, that he could post on the page and then they were removed. But they were all removed, and the undisputed facts demonstrate that. I mean, I guess what the other interesting question is, is can Mr. Akins link the city of Columbia Facebook post in his page and then attract the Facebook viewers that would have seen the city of Columbia post on its page to his page? I mean, that's a hard analysis to make. I mean, maybe he has the exact same ability to get to everyone else that the city of Columbia does in this particular venue. And I don't know if this is a public forum or a forum, at least not as we traditionally have analyzed it. But it doesn't matter because the removal of the comments and the posts were absolutely content neutral, and therefore under – and also there's no defendant, there's no respondeat superior liability and all that stuff, so the claim fails. But no question, even if you look at the First Amendment analysis, there is no problem here. And I'm unfortunately treading on Mr. Devine's time. Does the court want me to keep going? It's up to you. Was there any equitable relief requested? No. On the First Amendment claim? No. Your Honor, this is a claim for damages only, and basically it was a 1983 claim for damages. There's no equitable relief I'm aware of. What about the lobby, since you only have a minute? The lobby absolutely was never a public forum. There is a memorial to slain police officer Molly Bowden, which is well known in the Columbia, Missouri area for sure. There are some brochures, but there was – and there was no policy regarding the lobby. I think no one's ever tried to film there before, and I think that's what the undisputed facts show. And what the video shows is there was a man that shows up in a Ku Klux Klan hood to file a complaint, and the facts show that Mr. Akins was filming it, and a community service aide, not a police officer, said you can't film there, and he was asked to turn the camera off. In my mind, it has to be a nonpublic forum, and under the analysis of this court and the Supreme Court, it's absolutely clear that you can regulate on a reasonable basis the content and the speaker, and also the Rice case shows there's no right to film, which I think is another way to analyze the case. This isn't necessarily a positive speech case. It's a filming case. There is no right to film everywhere. The limitation here is absolutely reasonable for the court. As the court says, I mean, a person can come any time to the police department and make a complaint. They may not have access to a cell phone or a phone or an email to make a complaint, and then they're going to be filmed. I mean, there could be a camera filming everybody that goes there, and then people could take actions against people that report crimes. I think it's a serious problem, and I don't think you can say it's any way a limited public forum based on brochures being there. I think I'm done unless the court has further questions. Thank you. Is that rebuttal time? No, this is for Mr. Devine. Oh, sorry. It wasn't argued. It's on the briefs. Your issues of absolute immunity is on the briefs. Very good, Your Honor. Because they chose not to argue, so now it's rebuttal. Your Honor, the Rice case was a death penalty case where the filming of the death chamber. The compelling government interest in that case is well established. Let me ask you this, perhaps a strained analogy to a police department lobby. Does our policy of no cameras in the courtroom violate the First Amendment? No, Your Honor. So they can say no cameras in the police department lobby? Well, Your Honor, the court has, by tradition and logic, a lot more control over and does not want interference with what happens in the court process. And so the court can, if it wants, permit cameras in there, but there's no right for cameras in the courtroom. So if the Judicial Conference says the Courts of Appeals can have cameras in the courtroom, then the Supreme Court is constitutionally required to also go along? First of all, I don't think the Judicial Conference could bind the Supreme Court on that. And I'm out of time, Your Honor. May I continue? What's wrong with the – I don't understand why the lobby is a public forum to the extent that cameras must be permitted. Well, Your Honor, it is a designated point for citizens to petition the government for the redress agreements. That is textual for the First Amendment. He is exercising his First Amendment right to petition the government for redress agreements. He wants that documented. By filming something he chooses to film. Well, he is trying to communicate that. He is trying to communicate to his fellow citizens. We understand the position. Okay. Thank you, Your Honor. The case has been thoroughly briefed and argued, and we'll take it under advisement.